■ In the Matter of STATE OF NEW YORK, Appellant, v HORTENSE GOLDSTEIN et al., Respondents.—Mercure, J. Appeals (transferred to this court by order of the Appellate Division, Second Department) (1) from an order and judgment of the Supreme Court (Charde, Jr., J.H.O.), entered April 10, 1989 in Rockland County, which partially granted petitioner's application, in a proceeding pursuant to CPLR 5225 (b), to direct respondents to turn over certain moneys to petitioner, and (2) from an order of said court, entered August 9, 1989 in Rockland County, which denied petitioner's motion to set aside the court's order and judgment.

Respondent Stanley I. Goldstein, a licensed podiatrist practicing in Rockland County, was married to respondent Hortense Goldstein. The Department of Social Services conducted an audit of Stanley's Medicaid billings for the period March 1, 1981 through May 18, 1983, determined that all Medicaid billings for the audit period were improper and demanded that Stanley repay $366,403.70, together with penalty and interest in the additional sum of $75,263.35 as of October 31, 1984. The Department's determination was upheld following administrative review. On February 25, 1985, criminal proceedings were initiated in Rockland County charging Stanley with grand larceny in the second degree as the result of

fraudulent Medicaid billings during 1982, 1983 and 1984. Stanley pleaded guilty to the charge, was ordered to pay restitution to the State in the amount of $104,000 and was sentenced to four months in jail. Stanley paid $52,000 of the restitution at the time of sentence and signed a confession of judgment and a series of promissory notes for the balance. Stanley defaulted on the notes and the State obtained four separate judgments against him for the total sum of $57,434.64.

On January 9, 1985, Hortense commenced a divorce action against Stanley. In April 1985, the parties entered into a stipulation of settlement, under the terms of which Hortense received the marital residence, subject to Stanley's right to use the attached office indefinitely, the parties' vacation home in Charleston, South Carolina, subject to mortgage indebtedness, and $70,000 in liquid assets. Stanley received the parties' motor home, subject to secured indebtedness thereon, and $52,000 in liquid assets. In addition, the agreement provided for Stanley's payment of maintenance to Hortense in the amount of $50 per week for a total period of five years. Stanley and Hortense were divorced on May 30, 1985.

Petitioner, as judgment creditor, brought this proceeding in Supreme Court, *inter alia,* against Hortense pursuant to CPLR 5225 (b) to set aside allegedly fraudulent transfers *(see,* Debtor and Creditor Law § 273) of assets from Stanley to Hortense in the purchase of the South Carolina realty and in the division of marital property in connection with the divorce proceeding. Following trial before a Judicial Hearing Officer, Supreme Court granted judgment partially denying the relief requested and thereafter denied petitioner's motion to set aside certain of its findings. Petitioner now appeals.

The theory behind petitioner's claim against Hortense's original undivided one-half interest in the South Carolina realty is that, between October 14, 1983 and November 30, 1983, Stanley deposited $60,534 in "stolen" Medicaid fees into a joint account with Hortense at Empire of America Bank, that the bank account was jointly held "in name only", with no intention to transfer an interest in the funds to Hortense, and that on December 2, 1983 $49,431.80 of these funds were withdrawn and applied toward the $50,000 down payment on the property, which Stanley and Hortense took jointly. Supreme Court determined, however, that the funds deposited into the account could not be traced to improperly obtained Medicaid funds and that petitioner failed to rebut the presumption under Banking Law § 675 (a) that the deposits into

the joint account conferred a one-half interest in the funds in Hortense. Since joint funds were used to purchase jointly owned realty, Supreme Court reasoned that the purchase was not a conveyance without fair consideration within the purview of Debtor and Creditor Law § 273. We agree. Contrary to petitioner's argument, there is insufficient evidence in the record to support a finding that the Goldsteins had *no* funds before Stanley began to misappropriate Medicaid funds in 1981 and that all funds acquired from 1981 through 1984 were "stolen". The record is essentially barren of competent evidence of the Goldsteins' financial status in 1981. Further, although the record shows that during the period March 1, 1981 through November 30, 1984 Stanley received $623,682.72 in Medicaid funds, he was only found to have misappropriated $366,403.70 during the audit period of March 1, 1981 through May 18, 1983. Although we may well speculate that the $257,279.02 balance was also misappropriated, such conjecture will not satisfy petitioner's burden of proof. Significantly, the funds which Stanley deposited into the Empire of America Bank account were acquired after May 18, 1983, the conclusion of the audit period.

Turning to the issues surrounding the Goldsteins' division of marital property, we first reject petitioner's unsupported contention that there is no marital property to distribute in a case where the aggregate debt of the parties exceeds the aggregate value of their assets. While perhaps an unfortunate commentary on contemporary life in America, it is not at all uncommon in matrimonial practice to encounter a bankrupt marital partnership where, as here, debt exceeds assets. In those, as in all cases, marital assets and liability for payment of indebtedness are to be distributed in accordance with the factors set forth in Domestic Relations Law § 236 (B) (5) (d) *(see, Savage v Savage,* 155 AD2d 336, 337). While there have been a number of cases directing an equal apportionment of marital indebtedness *(see, e.g., Ducharme v Ducharme,* 145 AD2d 737, 740, *lv denied* 73 NY2d 708; *Capasso v Capasso,* 129 AD2d 267, 292-293, *lv denied, lv dismissed* 70 NY2d 988), they provide no support for petitioner's position here. Assuming that the equitable distribution factors justify it, the bulk of the assets may be distributed to one party and liability for the payment of debt in an amount exceeding marital assets may be allocated to the other *(see,* Domestic Relations Law § 236 [B] [5] [d]).

We also reject the contentions that the proof adduced at trial mandated a finding that the Goldsteins' property settle-

ment was collusory and that the distribution to Hortense was not supported by consideration. The circumstances relied upon by petitioner in support of its collusion argument, such as the fact that Hortense selected her divorce lawyer upon a recommendation from Stanley's lawyer, that the parties reached a settlement of the divorce action without undue rancor, that Hortense paid her lawyer only $1,000 for his services and that Hortense's neighbors were not aware of the divorce, are as supportive of an innocent interpretation as a guilty one. Under the circumstances, we see no basis for disturbing the findings of the trier of fact, who had the benefit of hearing and observing the demeanor of the parties firsthand *(see, Alleva v Alleva Dairy,* 129 AD2d 663). Finally, considering the evidence of Stanley's wasteful dissipation of marital assets *(see,* Domestic Relations Law § 236 [B] [5] [d] [11]), the duration of the marriage, Hortense's age and health *(see,* Domestic Relations Law § 236 [B] [5] [d] [2]), her contributions to the marriage and to Stanley's career *(see,* Domestic Relations Law § 236 [B] [5] [d] [6]), and the insignificant amount of maintenance to be paid by Stanley *(see,* Domestic Relations Law § 236 [B] [5] [d] [5]), we agree that the overall distribution of marital assets and allocation of liability for payment of marital indebtedness is supported by the evidence.

We have examined petitioner's remaining contentions and find them to be without merit.

Orders and judgment affirmed, with costs. Casey, J. P., Mikoll, Yesawich, Jr., Levine and Mercure, JJ., concur.